## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Linda S. H.,

        Plaintiff,

v.

Andrew Saul, Commissioner of Social
Security,

        Defendant.

Case No. 19-cv-1863 (TNL)

**ORDER**

Edward C. Olson, 331 Second Avenue South, Suite 420, Minneapolis, MN 55401 (for Plaintiff); and

Elvi Jenkins, Social Security Administration, 1301 Young Street, Suite A702, Dallas, TX 75202 (for Defendant).

## I.   INTRODUCTION

Plaintiff Linda S. H. challenges Defendant Commissioner of Social Security's denial of her application for disability insurance benefits ("DI") under Title II of the Social Security Act, 42 U.S.C. § 1381. This matter is before the Court on the parties' cross motions for summary judgment. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and D. Minn. LR 7.2. For the reasons set forth below, the Court grants Plaintiff's motion and denies Defendant's motion.

## II.   BACKGROUND

### A.  Procedural History

Plaintiff filed an action for DI on August 25, 2015, alleging a disability onset date of February 28, 2015. Plaintiff alleged impairments of lupus, severe depression, anxiety, and hypothyroidism. Plaintiff was found not disabled on December 4, 2015. That finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge. A hearing was held on July 24, 2018 and, on August 31, 2018, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied her request for review. Plaintiff now seeks review by this Court.

### B.  Administrative Hearing and ALJ Decision

The ALJ found that Plaintiff had the following severe impairments: lupus, fibromyalgia, anxiety, depression, and posttraumatic stress disorder. (Tr. 13). The ALJ then found and concluded that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt 404, subpt. P, app. 1 (Tr. 13). The ALJ considered Listings 14.02A, 12.04, 12.06, and 12.15. (Tr. 13-15). The ALJ then found that Plaintiff had the residual functioning capacity ("RFC")

> to perform medium work as defined in 20 CFR 404.1567(c)
> except that she is restricted to simple, routine, and repetitive
> tasks. Claimant can have only brief and superficial interaction
> with the public and coworkers. Claimant requires a low stress
> environment defined as having only occasional decision
> making and occasional changes in the work setting. Claimant
> can only frequently climb ramps and stairs, balance, stoop,

> kneel, crouch, and crawl. Claimant cannot climb ladders, ropes, or scaffolds.

(Tr. 15-16). The ALJ further found that Plaintiff was unable to perform past relevant work; that she was closely approaching retirement age; and had at least a high school education and could communicate in English. (Tr. 21). The ALJ then concluded there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 21). In particular, the ALJ found that Plaintiff could work in "medium, unskilled occupations," including office cleaner. (Tr. 22). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 22).

## III.   ANALYSIS

### A.  Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his or her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his or her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether:

> (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4)). In general, the burden of proving the existence of disability lies with the

claimant. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

This Court reviews whether the ALJ's decision is supported by substantial evidence

in the record as a whole. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citing

*Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)); 42 U.S.C. § 405(g). "Substantial

evidence means less than a preponderance but enough that a reasonable person would find

it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v.*

*Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). This standard requires the Court to "consider

the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687

F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 393 F.3d 988, 993 (8th Cir.

2005)).

The ALJ's decision "will not [be] reverse[d] simply because some evidence

supports a conclusion other than that reached by the ALJ." *Perks*, 687 F.3d at 1091 (citing

*Pelkey v. Barnhart*, 433 F.3d 575, 578) (8th Cir. 2006)). "If, after reviewing the record, the

court finds it is possible to draw two inconsistent positions from the evidence and one of

those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision."

4

*Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Likewise, courts "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578.

### B. Administrative Record

In March 2014, Plaintiff appeared for a visit with Dr. Lisa Germscheid. (Tr. 313). Plaintiff reported that she felt well and had no "exertional pain." (*Id.*). She did indicate she felt some chest pain when resting. (Tr. 316). At a consultation approximately ten months later, Plaintiff indicated she had no joint, neck, or back pain; no myalgias or stiffness; and no muscle weakness. (Tr. 321). Similar observations were reported at a check-in a few months later. (Tr. 325-26). Plaintiff did, however, report that she felt fatigued from time-to-time. (Tr. 327).

Toward the end of 2015, Plaintiff saw a rheumatologist, who thought she might have fibromyalgia. (Tr. 394). Plaintiff reported that her joints did not "hurt as much as her skin seems to hurt." (*Id.*). Early the following year, Plaintiff saw Dr. Germscheid, who indicated her chronic pain likely manifested from her depression, and noted that Plaintiff's gait and station remained normal, as did her muscle strength. (Tr. 456). Plaintiff reported continued muscle aches and "some joint pain." (Tr. 457). A few weeks later, at a subsequent appointment, Plaintiff stated that she had good days and bad days, but that her pain was controlled at the time. (Tr. 458).

Toward the end of April 2016, Plaintiff indicated increased joint, neck, and back pain. (Tr. 462). Plaintiff later reported trigger points in her chest and back. (Tr. 463). A few months later, Plaintiff reported that her Plaintiff's fibromyalgia was improved. (Tr. 464). She continued to exhibit normal station, gait, and strength, and no joint swelling or redness. (Tr. 464). Similar observations were made of Plaintiff at August 2016 appointments. (Tr. 468-71).

Plaintiff again saw Dr. Germscheid in November 2016. Plaintiff indicated her right arm and left felt weaker; that her balance was "off a little bit;" and that she was experiencing joint pain and right shoulder pain. (Tr. 471-73). Plaintiff did not, however, exhibit any "demonstrable arm weakness." (*Id.*). She also was negative for myalgias and neck pain. (*Id.*). About a month later, Plaintiff reported that her "fibromyalgia chronic pain . . . [was] fairly well controlled." (Tr. 476). She reported the same at an August 2017 appointment. (Tr. 483). Plaintiff later indicated that medication helped with fibromyalgia-related pain, but that the pain still gave her trouble. (Tr. 484). She subsequently indicated that she forgot take her medication on occasion. (Tr. 492-96).

Dr. Germscheid ultimately concluded Plaintiff had chronic pain and fatigue. (Tr. 592-93). She indicated Plaintiff could continuously stand for no more than 5 minutes at a time and that Plaintiff could stand, walk, and sit less than two hours in an eight-hour workday. (Tr. 594-95). She further stated that Plaintiff would require unscheduled breaks at least twice during the workday and that Plaintiff required a job that permits shifting positions at will. (Tr. 595). Dr. Germscheid stated that Plaintiff had "constant chronic" pain in her lumbosacral spine and cervical spine, as well as bilateral pain in her shoulders, arms,

6

hands, fingers, hips, legs, knees, ankles, and feet. (Tr. 593). She opined that Plaintiff could

lift less than 10 pounds only occasionally and that Plaintiff had significant limitations in

her ability to do certain repetitive activities. (Tr. 596). Finally, Dr. Germscheid indicated

that Plaintiff would be absent from work more than three times a month as a result of her

impairments. (Tr. 597).

In evaluating Plaintiff's claim at the initial level, Dr. Charles T. Grant stated that

Plaintiff could occasionally lift 50 pounds; frequently lift 25 pounds; and could stand, sit,

or walk about six hours in an eight-hour workday. (Tr. 66). He also noted Plaintiff's ability

to push or pull (outside of the weight limitations) would be unlimited. (*Id.*). His findings

were reaffirmed on reconsideration. (Tr. 80-81).

At the hearing before the ALJ, Plaintiff testified she had not worked since 2015. (Tr.

37). She stated that she became very weak and that she was in "a lot of pain." (Tr. 39). She

also noted that medication helped reduce, but not eliminate, the pain. (Tr. 40). She indicated

that she believed she could lift 15 pounds at most; that she could walk no more than 50 feet

at a time; and that she could stand for 15 minutes at a time without feeling pain or anxiety.

(Tr. 42-43). Plaintiff further indicated she had difficulty using her hands; bending over;

kneeling; squatting; and crawling. (Tr. 44). Plaintiff also testified that she did some chores

around the house, including sweeping, vacuuming, and dusting. (Tr. 47). She also did the

laundry but had trouble with the stairs. (*Id.*).

### C. Plaintiff's RFC is Not Supported by Substantial Evidence

Plaintiff argues the RFC set forth by the ALJ is not supported by substantial

evidence. The RFC is the most a person can do despite his or her mental and physical

limitations. 20 C.F.R. §§ 404.1545; 416.945. The Commissioner's determination of a

person's RFC must be "based on all of the relevant evidence, including the medical records,

observations of treating physicians and others, and an individual's own description of his

limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v.*

*Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

Plaintiff argues that the ALJ erred by finding that her fibromyalgia allowed her to

perform activities at a medium exertional level. Medium work is defined as

> lifting no more than 50 pounds at a time with frequent lifting
> or carrying of objects weighing up to 25 pounds. A full range
> of medium work requires standing or walking, off and on, for
> a total of approximately 6 hours in an 8-hour workday in order
> to meet the requirements of frequent lifting or carrying objects
> weighing up to 25 pounds. As in light work, sitting may occur
> intermittently during the remaining time. Use of the arms and
> hands is necessary to grasp, hold, and turn objects, as opposed
> to the finer activities in much sedentary work, which require
> precision use of the fingers as well as use of the hands and
> arms.
>
> The considerable lifting required for the full range of medium
> work usually requires frequent bending-stooping. (Stooping is
> a type of bending in which a person bends his or her body
> downward and forward by bending the spine at the waist.)
> Flexibility of the knees as well as the torso is important for this
> activity. (Crouching is bending both the legs and spine in order
> to bend the body downward and forward.) However, there are
> relatively few occupations in the national economy which
> require exertion in terms of weights that must be lifted at time
> (or involve equivalent exertion in pushing and pulling), but are
> performed primarily in a sitting position, e.g., taxi driver, bus
> driver, and tank-truck driver (semi-skilled jobs). In most
> medium jobs, being on one's feet for most of the workday is
> critical. Being able to do frequent lifting or carrying of objects
> weighing up to 25 pounds is often more critical than being able
> to lift up to 50 pounds at a time.

SSR 83-10. In assessing Plaintiff's RFC, the ALJ gave partial weight to the state agency physicians, who opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently (Tr. 17). The ALJ gave limited weight to Dr. Germscheid's July 18 statement indicating Plaintiff would be unable to perform work that required a medium level of exertion. The ALJ explained that Dr. Germscheid's "own contemporaneous treatment documentation does not contain supportive clinical or other objective findings restricting claimant effectively to having to lie down for more than half of an eight hour work period." (Tr. 20). The ALJ further noted that Plaintiff's reported activities, including tree pruning and quilting were inconsistent with the doctor's "form statement." (Tr. 20).

Medical opinions from treating sources, like Dr. Germscheid, are given substantial, weight so long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Typically, such opinions are weighed using several factors: (1) the examining relationship; (2) the treatment relationship, such as the (i) length of the treatment relationship and frequency of examination and the (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).

It was reasonable for the ALJ to consider Dr. Germscheid's statement in the context of Plaintiff's self-reported activities. *Cheryl J. v. Saul*, No. 18-cv-1292, 2019 WL 4673943, at *11-*14 (D. Minn. Sept. 25, 2019). But as Plaintiff notes, the ALJ did not identify how those activities contradicted the treating physician. The ALJ did not explain, for example,

9

how the ability to quilt meant a person could lift 50 pounds on occasion or stand for multiple hours at a time. *See Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995) (explaining that the ability to engage in certain household activities does not establish the ability to engage in full-time work).

The ALJ also did not explain how the underlying medical evidence contradicted the treating physician's opinion that Plaintiff could lift less than 10 pounds on occasion. Nor did the ALJ identify with any specificity how the underlying medical evidence contradicted the treating physician's opinion regarding Plaintiff's ability to remain on her feet. The ALJ's failure to do so renders the ALJ's analysis incomplete. *See id*. The ALJ must explain the weight assigned to the treating physician's opinion "sufficient for a reviewing court to determine whether the ALJ took into account the appropriate factors when considering the opinion evidence and whether the ALJ's rationale—and ultimately the residual-functional-capacity determination—is supported by substantial evidence in the record as a whole." *Marlene M. v. Berryhill*, No. 18-cv-258, 2019 WL 1383894, at *9 (D. Minn. Mar. 27, 2019); *see Noerper v. Saul*, No. 18-3418, ___ F.3d ___, 2020 WL 3815961, at *6 (8th Cir. July 8, 2020) ([W]e do not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality. Something, however, is needed."). In this case, the ALJ's decision to disregard the treating physician's opinion on the basis of activities of daily living and by generally referencing the medical evidence as a whole is insufficient to permit that review. This is particularly true because, while the Court's review of the medical evidence suggests that Plaintiff was able to control her

10

fibromyalgia on occasion, nothing in that evidence suggests that Plaintiff had the ability to lift the weight required to perform a medium level of work or stand on her feet for the required amount of time.

Furthermore, the ALJ's decision to discount Plaintiff's own testimony is also without substantial evidence. In considering a person's testimony regarding subjective complaints of pain and severity, the ALJ must consider the

> (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.

*Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Though the ALJ need not explicitly discuss each of these factors, the ALJ may not discount a claimant's allegation of disabling pain unless there are "inconsistencies in the evidence as a whole." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (citation omitted). This Court must defer to the ALJ's credibility finding if the ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue,* 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

In this case, the ALJ explained that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms was not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 16). But as with the ALJ's findings regarding the treating physician's opinion, the ALJ's findings regarding Plaintiff's testimony and the supporting medical

evidence are too conclusory to permit meaningful review by this Court. Again, the ALJ's brief reference to Plaintiff's activities of daily living does not establish that Plaintiff has the functional capacity to perform a medium level of work. The ALJ also failed to discuss with any specificity the medical records, aside from general references to the "objective imaging, clinical, and laboratory evidence," or explain how those records rebutted Plaintiff's testimony. To the extent the ALJ referenced those notes, the ALJ noted only that treatment records indicated Plaintiff's gait and station was normal, a factor that would seem to have little bearing on Plaintiff's ability to lift, stand, or sit with the intensity or frequency required to engage in a medium level of work.

Finally, the Court is also concerned by the fact that the ALJ gave some weight to the state agency physicians, both of whom believed Plaintiff could engage in a medium level of work based on the medical records. As the ALJ noted in assigning only partial weight to the state consultant assessments, such opinions are typically entitled to little weight, in large part because the examiners do not treat Plaintiff personally. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). But though the ALJ assigned only partial weight to those opinions, he still gave them more weight than the opinion offered by Plaintiff's treating provider, which the ALJ may do only when "better or more thorough medical evidence" exists, provided the ALJ's reasons for that assessment are supported by substantial evidence. *Smith v. Colvin*, 756 F.3d 621, 625-26 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). In this case, the ALJ did not explain why the state agency opinions were entitled to more weight than that of Dr. Germscheid, or why those opinions should be credited in light of

12

Plaintiff's own testimony. Accordingly, the Court will remand the case for further proceedings.

## IV.    CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment (ECF No. 15) is **GRANTED**;

2.  Defendant's Motion for Summary Judgment (ECF No. 17) is **DENIED**;

3.  The Commissioner's decision is **VACATED** as to steps four through five; and

4.  This case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: July 27, 2020                            *s/ Tony N. Leung*
                                               Tony N. Leung
                                               United States Magistrate Judge
                                               District of Minnesota

                                               *Linda S. H. v. Saul*
                                               Case No. 19-cv-1863 (TNL)